**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

CLARENCE ABNEY,                    :    CIVIL NO: 1:13-CV-01418
                                   :
            Plaintiff,          :
                                   :    (Judge Kane)
      v.                            :
                                   :
CALEB YOUNKER, et al.,             :
                                   :    (Magistrate Judge Schwab)
                                   :
            Defendants.         :

## REPORT AND RECOMMENDATION

I.    **Introduction**.

The plaintiff, Clarence Abney ("Abney"), brings this action against 17

named Department of Corrections ("DOC") employees (collectively "defendants")

under 42 U.S.C. § 1983 for the alleged violations of his rights under the Eighth

Amendment.[1]  Additionally, Abney brings state law claims of assault, battery, and

intentional infliction of emotional distress.  Pending before the Court is the

defendants' motion to dismiss Abney's supervisory liability claims, set forth in

---

[1] In his complaint, Abney additionally includes three John or Jane Doe defendants,
whom he alleges were, at all times relevant, employed by the DOC and were
involved in the alleged incidents underlying his lawsuit.

Count V of his complaint, as well as his state law tort claims, set forth in Counts VII-IX, under Federal Rule of Civil Procedure 12(b)(6).[2]

While it is noted that each defendant is immune from liability for damages under § 1983 in his official capacity, such immunity does not extend to the defendants in their individual capacities. Accordingly, and for the reasons that follow, we recommend that the Court deny the defendants' motion to dismiss the individual capacity claims contained in Counts V and VII-IX of Abney's complaint.

## II.   Background and Procedural History.

On May 24, 2013, Abney, a state prisoner, housed at the State Correctional Institution at Huntingdon (SCI Huntingdon), initiated this lawsuit by filing a complaint against seventeen defendants. *Doc. 1* at ¶¶ 4-20. According to the complaint, on June 29, 2012, Abney, who was returning to A Block from outdoor recreation, retrieved his ID card, which was secured by the waistband of his shorts, and placed it on the desk as required. *Id.* at ¶¶ 23-26. Rather than accept the ID card, which was covered in perspiration, defendant Younker allegedly made a "rude gesture" indicating that the ID card was too sweaty to touch, and defendant Brooks ordered Abney to submit to a pat search. *Id.* at ¶¶ 27-29. Abney alleges

---

[2] Sixteen of the seventeen defendants move to partially dismiss Abney's complaint. Defendant Sergeant Nathan Lehman is not included as a moving party in the subject motion to dismiss, and he has filed an answer to the complaint.

that defendant Younker then made another "rude gesture" to which Abney responded that Younker should speak to him instead of making gestures toward him. *Id.* at ¶¶ 34-35. Defendant Younker then allegedly ordered Abney to report to the Restricted Housing Unit ("RHU") at which point, Abney took two swings at defendant Younker. *Id.* at ¶¶ 38-40.

Abney alleges that after he swung at defendant Younker, nine defendants – Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery, Everly, and Yarnell– tackled, assaulted, and beat him, while six defendants–Harker, Maxwell, Bumbarger, Booher, Huber, and Wertz–arrived on the scene during the alleged beating but failed to intervene. *Id.* at ¶¶ 45-83. Abney further alleges that, after he lost a significant amount of blood and was already unconscious, the defendants ordered restraints applied to his hands and feet. *Id.* at ¶¶ 84-92. Abney alleges that while he was restrained and drifting in and out of consciousness, the defendants dragged him to the RHU where no medical care was rendered, but an ambulance was called. *Id.* at ¶¶ 84-108.

According to Abney, he was airlifted from the RHU to the Trauma Center at Altoona Regional Health System. *Id.* at ¶ 116. Once he arrived at the Trauma Center, Abney was intubated and diagnosed with a concussion, nasal fracture, and facial lacerations, and he was placed on mechanical ventilation. *Id.* at ¶¶ 117-120.

As a result, Abney brings this lawsuit alleging that the defendants violated his rights under the Eighth Amendment.  In addition to his claims under § 1983, Abney brings state law claims of assault, battery, and intentional infliction of emotional distress.  Based on the alleged facts and violations of law, Abney requests injunctive relief and damages.

On July 24, 2013, sixteen of the seventeen named defendants filed a motion and supporting brief, under Fed.R.Civ.P. 12(b)(6), seeking dismissal of Abney's failure to train and supervise claim, set forth in Count V of his complaint, as well as dismissal of the state law claims, set forth in Counts VII-IX as barred by the Eleventh Amendment and Sovereign Immunity.  *Docs. 10 & 11*.  On August 20, 2013, Abney filed a timely brief in opposition.  *Doc. 12*.  Thereafter, on September 16, 2013, the defendants filed a reply brief, to which Abney responded in a sur reply brief.  *Doc. 17 & 21*.   As the parties have fully briefed the issues, the motion is ripe for disposition on the merits.

**III.**   **<u>Standard of Review – 12(b)(6) Motion to Dismiss</u>**.

The defendants move to partially dismiss Abney's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  The Third Circuit recently noted the evolving benchmark standard for legal sufficiency of a complaint stating that:

4

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Philips* [*v. County of Allegheny*, 515 F.3d 224, 230 (3rd Cir.2008) ] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UMPC Shadyside*, 578 F.3d 203, 209–10 (3rd Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3rd Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir. 1997). Further, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Supreme Court has stated that in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The Court in *Twombly* also stressed

that the allegations and the supporting facts must raise a right to relief to something

higher than a speculative level.  *Id.*  More recently, the Supreme Court refined

these pleading requirements stating that the pleaded facts must amount to more

than "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, when

reviewing pleadings for sufficiency, the Supreme Court advises trial courts to:

> Begin by identifying pleadings that because they are no more
> than conclusions are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must-be supported by factual allegations. When
> there are well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

*Id.* at 679.

As such, following *Twombly* and *Iqbal* a well-pleaded complaint must

contain more than mere legal labels and conclusions and raise the plaintiff's

claimed right to relief beyond the level of mere speculation.  The Third Circuit

advised that:

> [A]fter *Iqbal*, when presented with a motion to dismiss for
> failure to state a claim, district courts should conduct a two-part
> analysis.  First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard any
> legal conclusions.  Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." In other

> words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such an
> entitlement with its facts.

*Fowler*, 578 F.3d at 210–11.

Applying these guiding principles, we conclude that the allegations set forth in Count V of Abney's complaint are sufficient to state a claim of supervisory liability against defendants Stevens and Bickell upon which the requested relief can be granted under 42 U.S.C. § 1983.  Additionally, since the immunity that protects the defendants from suit in their official capacities, under the Eleventh Amendment, does not extend to claims set forth against them in their individual capacities, and further, since it is unclear at this early stage whether the defendants were acting within the scope of their employment and thus are protected by sovereign immunity, the defendants' motion to dismiss Counts VII-IX should be denied.

## IV.   **Discussion**.

### A.  **Plaintiff's 1983 Claims Based on Supervisory Liability.**

In Count V of his complaint, Abney alleges that defendant Stevens ("Stevens") and defendant Bickell ("Bickell") are liable under § 1983 because they failed to adequately train and supervise their subordinates resulting in the alleged violations of Abney's Eighth Amendment rights.  These defendants argue that Abney fails to state a claim under § 1983 because Abney failed to allege their

personal involvement in the alleged unconstitutional conduct of their subordinates.

Accordingly, Stevens and Bickell move to dismiss the claims set forth in Count V

of Abney's complaint.

Government officials may not be held liable for the unconstitutional conduct

of their subordinates predicated solely on the operation of *respondeat superior*.

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  Because vicarious liability is

inapplicable to § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own actions, has violated the Constitution.

*Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 71 (3d Cir.

2011).  As was observed by the Supreme Court in *Iqbal*, "in a 1983 suit . . . where

masters do not answer for the torts of their servants – the term 'supervisory

liability' is a misnomer." *Id.*  Nevertheless, because Abney's claims against

Stevens and Bickell implicate them in their roles as supervisors, we address the

claims in terms of supervisory liability.[3]

Abney sufficiently pleads two theories of supervisory liability that are

applicable to this case. The first of these theories provides that a supervisor may be

---

[3] Numerous courts have expressed uncertainty as to the continued viability and
scope of supervisory liability following *Iqbal*.  See, e.g., *Bayer v. Monroe*, 577
F.3d 186, 190 n.5 (3d Cir. 2009); *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th
Cir. 2010); *Parish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).  Since, however,
*Iqbal* did not clearly overrule Third Circuit law on supervisory liability we are
bound to follow that law unless or until the Third Circuit rules otherwise.

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of, and acquiesced in, his subordinates' violations. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).   Under the second theory of supervisory liability that Abney alleges, a supervisor who acts as a policymaking authority may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is the cause of this unconstitutional conduct. *Argueta*, 643 F.3d at 71.

Under the first theory, Abney sufficiently alleges that Stevens, as shift commander, and Bickell, as superintendent, had knowledge of, and acquiesced in their subordinate's previous violations of DOC policy on the excessive use of force and restraints.   In order to sufficiently allege that a defendant knew and acquiesced in his subordinate's unconstitutional conduct, a plaintiff must plead the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior. *See C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).   Additionally, allegations that a supervisor "tolerated past or ongoing misbehavior" may suffice to establish his or her personal involvement. *Baker v.*

*Monroe Township*, 50 F.3d 1186, 1191 n.3 (3d Cir. 2004).  Accordingly, where the supervisory defendant is found to have knowledge of ongoing constitutional issues or problems, and the supervisory defendant has the authority or means to address the matters, failing to take appropriate action can be a basis for supervisory liability.  *See Zion v. Nassau*, 727 F.Supp.2d 388 (W.D. Pa. 2010); *Barber v. Pennsylvania State Police*, Civ. A. No. 06-1713, 2007 WL 2071896 (W.D. Pa. Jul. 19, 2007); *Owens v. Hahnemann Univ.*, Civ. A. No. 94-4654, 1995 WL 392516 (E.D. Pa. Jun. 27, 2005).

Here, Abney claims that defendants Stevens and Bickell had knowledge of, and acquiesced in, their subordinates' routine use of excessive force, instead of requiring compliance with the DOC policy and taking proper disciplinary action against their subordinates who violate the policy to deter future misconduct.  More specifically, with regard to defendant Stevens, Abney alleges that as shift commander, Stevens is responsible for providing for the safety of prisoners and for making sure that the corrections officers under his command understand and comply with DOC policy on the use of force and restraints.  He further alleges that previously reported similar incidents alerted defendant Stevens to the ongoing unconstitutional conduct of his subordinates and the need for additional training. Abney alleges that despite Stevens's knowledge of the ongoing constitutional violations, he tolerated his subordinates' use of excessive force and improper

restraints, instead of taking steps, as the person in charge, to correct the misconduct.  Abney further alleges that Stevens's failure to take steps to correct the misconduct in the past is what caused Stevens's subordinates to violate his civil rights.

Additionally, Abney sufficiently pleads Bickell's knowledge and acquiescence, and thus personal involvement, in the alleged unconstitutional conduct of his subordinates.  Specifically, Abney alleges that Bickell, as superintendent, is responsible for the training and supervision of the corrections officers at SCI Huntingdon and that Bickell knew of other occasions when DOC policy on the use of force was violated by his subordinates.  As the individual with authority to provide the training necessary to ensure that DOC policy on the use of force and restraints is understood and complied with, Bickell, Abney alleges, failed to appropriately discipline officers involved in past instances of unconstitutional conduct.  Abney alleges that this failure to appropriately discipline past unconstitutional conduct was what caused the alleged violations of Abney's civil rights.

In addition, Abney sufficiently pleads the personal involvement of defendants Stevens and Bickell under the second theory of supervisory liability. Abney alleges that Stevens and Bickell, as policymakers at SCI Huntingdon, established and maintained a custom of use of excessive force against oppositional

prisoners, creating an environment in which such unconstitutional conduct was condoned and encouraged, enabling the injuries Abney alleges in his complaint. To hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, a plaintiff is required to identify a specific policy or practice that the supervisor failed to employ and demonstrate that (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

Specifically, Abney alleges that defendants Stevens and Bickell, as shift commander and superintendent respectively, had responsibility for developing policies and procedures at SCI Huntingdon.  Abney alleges that defendant Stevens had the responsibility to require officers to comply with the DOC policies and procedures on the use of force and restraints and that his tolerance of prior instances unconstitutional conduct enabled future misconduct by his subordinates. Abney contends that Stevens' failure to require that the officers under his command comply with DOC policy is what caused the corrections officers' failure to intervene when they saw Abney being beaten.

Furthermore, Abney alleges that Bickell, as a policymaker at SCI Huntingdon, failed to adequately train and supervise his subordinates to ensure that

they complied with DOC policy and procedure on the use of force and restraints.

Abney alleges that defendant Bickell's failure to adequately train and supervise his

subordinates, coupled with his failure to adequately discipline similar

unconstitutional conduct in the past, of which he was aware, created an

environment in which such misconduct was tolerated as acceptable at SCI-

Huntingdon.

We conclude Abney has adequately alleged the personal involvement of

Stevens and Bickell under both theories of supervisory liability in Count V of his

complaint.  As such, Abney has sufficiently stated a claim under 42 U.S.C. § 1983

against Stevens and Bickell.  Accordingly, we recommend the defendants' motion

to dismiss Count V of Abney's complaint be denied.

## B.  Eleventh Amendment Immunity.

In addition to the constitutional claims discussed, *supra*, Abney asserts state

law tort claims of assault, battery, and the intentional infliction of emotional

distress against the defendants in both their official and individual capacities.  The

defendants argue that as DOC employees, they are immune from suit under the

Eleventh amendment.  Accordingly, the defendants move to dismiss the state law

claims set forth in Counts VII-IX of Abney's complaint.

Although the Eleventh Amendment prohibits claims for damages against

employees of the DOC sued in their official capacities, such immunity does not

extend to the defendants in their individual capacities.  *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990); *Bolden v. Pa. Bureau of Prisons*, 2011 WL 4974489, at *2 (E.D. Pa. 2011).   Thus, to the extent that Abney's claims are brought against the defendants in their official capacities, they are barred under the Eleventh Amendment.  Since such immunity, however, does not extend to the defendants in their individual capacities, we recommend that the defendants' motion to dismiss Counts VII- IX on the basis of Eleventh Amendment immunity be denied.

### C. Sovereign Immunity.

Additionally, the defendants argue that Abney's state law tort claims are barred by the principles of sovereign immunity and, accordingly, move to dismiss the claims set forth in VII-IX of the Complaint.  In response, Abney argues that dismissal of his state law tort claims is precluded because the alleged outrageousness of the conduct at issue raises a question of fact as to whether sovereign immunity shields the defendants from liability.

As an agency of the Commonwealth, the DOC and its employees are governed by 1 Pa. C.S. § 2310, which codifies the doctrine of sovereign immunity. 1 Pa. C.S. § 2310; *see also Wesley v. Hollis*, No. Civ. A. 03-3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).  Sovereign immunity "protects the Commonwealth and Commonwealth parties from suit unless the cause of action falls within one of several statutory exceptions, or the individual's conduct falls

outside the scope of his employment." *Wesley v. Hollis*, No. Civ. A. 03-3130,

2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).  An employee's conduct falls

within the scope of employment when it: "(1) is the kind that the employee is

employed to perform; (2) occurs substantially within the job's authorized time and

space limits; (3) is motivated at least in part by a desire to serve the employer; and

(4) if force was used by the employee against another, the use of force is not

unexpect[ed] by the employer." *Savage v. Judge*, No. Civ. A. 05-2551, 2007 WL

29283, at *5 (E.D. Pa. Jan. 2, 2006) (quoting Restatement (Second) of Agency §

228).

Abney's complaint includes state law claims for assault, battery, and the

intentional infliction of emotional distress.  The defendants argue that because they

were acting within the scope of their employment and Abney's tort claims do not

fall within any of the nine limited exceptions to sovereign immunity, they are

immune under the doctrine.

While it is true that Abney's state law claims are not included among

§ 8522's exceptions to sovereign immunity, it is unclear at this early stage of the

litigation whether the defendants' conduct fell within the scope of their

employment.  Courts in this district do not presume that "immunity is

automatically warranted" in every circumstance for every Commonwealth

employee.  *See Shipman v. Gelso*, No. Civ. A. 3:11-CV-1162, 2011 WL 5554252,

at *5 (M.D. Pa. Nov. 15, 2011).  A court may deny a motion to dismiss on the basis of state sovereign immunity where it is unclear from the facts of the case whether the Commonwealth employee defendants were actually acting within the scope of their employment.  *Id.*  Based on the alleged conduct of the defendants– the near-fatal and continued beating of Abney, even past the point when Abney allegedly lost consciousness and could no longer be perceived as a threat–we cannot say, as a matter of law, at this point that the defendants' conduct was consistent with the duties the defendants were employed to perform.  Where the alleged intentional tort was unprovoked, unnecessary, or unjustified by security concerns or penological goals, courts have ruled that such conduct does not, as a matter of law, fall within the scope of employment.  *See Velykis v. Shannon*, No. Civ. A. 06-0124, 2006 WL 3098025, at *3-4 (M.D. Pa. Oct. 30, 2006); *Wesley*, 2007 WL 1655483, at *15; *Bolden*, 2011 WL 4974489, at *5.

Furthermore, the courts have recognized that " 'an assault committed by an employee upon another person for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.' " *Zion v. Nassan,* 283 F.R.D. 247, 267 (W.D. Pa. 2012) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)).  Additionally, since an employee is generally authorized to use only "reasonable" measures to achieve a result desired by his or her employer, an

"outrageous" act may lie beyond the scope of his or her employment even where it constitutes "a means of accomplishing an authorized result." *Zion*, 283 F.R.D. at 267 (citing *Lunn v. Yellow Cab Co.*, 403 Pa. 231 (1961)). A high degree of "outrageousness" can take an employee's actions "outside the scope" of his or her employment. *Id.* (citing *Haas v. Barto*, 829 F. Supp. 729, 734 (M.D. Pa. 1993)); *but see Eve v. Lynch*, No. Civ. A. 11-01131, 2012 WL 1642503 (M.D. Pa. May 10, 2012) (finding that the record clearly supported the conclusion that the moving Commonwealth employee defendants were acting within the scope of their employment in responding to a dispute between restaurant employees and the plaintiff patron, and using excessive force to effectuate the plaintiff's arrest) .

Here, Abney alleges that the defendants used excessive force that could be seen as outrageous and contrary to the employer's expectations as set forth in the DOC policy because they allegedly continued to use such force long after Abney posed a threat. In that regard, Abney alleges that the ambulance crew found him unconscious and so badly beaten than they intubated and air lifted him to a distant trauma center. Accordingly, we conclude that Abney has raised an issue of fact as to whether the defendants were acting within the scope of their employment, and, therefore, we recommend that the defendants' motion to dismiss the claims set forth in Counts VII-IX of Abney's complaint be denied.

V.      **Recommendation**.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that

The defendants' motion (*Doc. 10*) to partially dismiss the complaint (*Doc. 10*) be

**DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter
> described in 28 U.S.C. § 636 (b)(1)(B) or making a
> recommendation for the disposition of a prisoner case or a
> habeas corpus petition within fourteen  (14) days after being
> served with a copy thereof. Such party shall file with the clerk of
> court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the
> proposed findings, recommendations or report to which objection
> is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge
> shall make a de novo determination of those portions of the
> report or specified  proposed findings or recommendations to
> which objection is made and may accept, reject, or modify, in
> whole or in part, the findings or recommendations made by the
> magistrate judge. The judge, however, need conduct a new
> hearing only in his or her discretion or where required by law,
> and may consider the record developed before the magistrate
> judge, making his or her own determination on the basis of that
> record. The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

Failure to file timely objections to the foregoing Report and
Recommendation may constitute a waiver of any appellate rights.
Submitted this **14th** day of **February, 2014**.

*S/ Susan E. Schwab*
**Susan E. Schwab**
**United States Magistrate Judge**
