UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE ABNEY, | : | 1:13-CV-01418 |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| SERGEANT CALEB YOUNKER, | : | |
| *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff, Clarence Abney, claims that he was the subject of excessive force in prison to such an extent that he had to be airlifted to a trauma center.   He brings numerous claims against numerous defendants.   Currently pending is a partial motion for summary judgment filed by some of the defendants.   The issue is whether Abney exhausted administrative remedies as to certain claims.   For the reasons set forth below, we recommend that the motion for partial summary judgment be granted in part and denied in part.

### II.  Background and Procedural History.

On May 24, 2013, Abney began this action by filing a complaint against seventeen named defendants and three John Doe defendants.   The named

defendants are Corrections Officers Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery, Everly, Yarnell, Bumbarger, Booher, Huber, Wertz and supervisory defendants Lieutenant Harker, Lieutenant Maxwell, Captain Stevens, and Superintendent Bickell.   The defendants are employees or officials at the State Correctional Institution at Huntingdon (SCI-Huntingdon).

Abney's claims stem from an incident at SCI-Huntingdon, on June 29, 2012, when he and defendant Younker had a dispute, and Abney punched Younker. According to Abney, defendants Younker, Brooks, and Lehman then repeatedly beat and kicked him, and they continued to do so even after he posed no threat.   Abney alleges that defendants Snyder, Hills, Hartman, Mallery, Everly, and Yarnell arrived on the scene, but instead of intervening to stop the assault, they joined in holding him down and beating him.   Abney further alleges that although he lost consciousness, the officers continued to assault him.   According to Abney, during the beating, defendants Bumbarger, Booher, Huber, Wertz, Harker, and Maxell arrived on the scene, but they too did not intervene to stop the abuse.

Abney alleges that while he was unconscious or only semiconscious, defendants Bumbarger, Booher, Huber, and Wertz, on orders from defendants Harker and Maxwell, restrained his hands and feet.   Abney was allegedly bleeding profusely from his head, his face was lacerated, and he was unconscious or

2

semiconscious.   According to Abney, although defendants Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery, Everly, Yarnell, Bumbarger, Booher, Huber, Wertz, Harker, and Maxwell observed that he needed treatment for his injuries, they did not provide first aid or take any action to obtain medical care for him.   After the beating, defendants Booher, Huber, and Wertz, at the direction of defendant Maxwell and observed by defendant Harker, dragged Abney by his wrists out of the block, causing him further injury because the weight of his body was made to hang from his arms, which were twisted back and bound together.   Abney alleges that he fell or was dropped at least once while he was being dragged, causing him further injury.

After Abney arrived at the Restricted Housing Unit, an ambulance was called, and Abney was subsequently airlifted to a trauma center.   Abney was diagnosed with a brain injury, a nasal fracture, facial lacerations, and he was for a time on mechanical ventilation.

Abney alleges that defendant Stevens failed to ensure that the officers were familiar with and complied with policies of the Department of Corrections (DOC) on the use of force and the use of restraints, and that failure caused him injury. Abney also complains that, in violation of DOC policy, defendant Stevens failed to inform his next of kin about his injuries.   Abney further alleges that defendant

Bickell failed to provide adequate training and supervision of the other defendants. He also alleges that the John Doe defendants failed to adequately screen or train the corrections officers.

Abney alleges that he suffered serious physical injuries as well as severe emotional distress as a result of the defendants' actions.   The complaint contains nine counts.   Count One is an Eighth Amendment excessive force claim against defendants Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery, Everly, and Yarnell based on the beating.   Count Two is an Eighth Amendment failure-to-intervene claim against defendants Bumbarger, Booher, Huber, Wertz, Harker, and Maxell.   Count Three is an Eighth Amendment claim against defendants Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery, Everly, Yarnell, Bumbarger, Booher, Huber, Wertz, Harker, and Maxell based on their failure to provide Abney with medical care.   Count Four is an Eighth Amendment excessive force claim against defendants Booher, Huber, Wertz, and Maxell based on the use of restraints and the dragging and dropping of Abney.   Count Five is a failure-to-train and failure-to-supervise claim against defendants Stevens and Bickell.   Count Six is an Eighth Amendment failure-to-screen claim against the John Doe defendants.   Count Seven is a state law claim for assault and battery against defendants Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery,

Everly, and Yarnell based on the beating.   Count Eight is a state law claim for assault and battery against defendants Booher, Huber, Wertz, and Maxell based on the use of restraints and the dragging and dropping of Abney.   And Count Nine is a state law claim of intentional infliction of emotional distress against all the named defendants.   Abney is seeking compensatory and punitive damages as well as declaratory and injunctive relief.

In July of 2013, defendant Lehman filed an answer to the complaint.   Later that month, the sixteen other named defendants filed a partial motion to dismiss the complaint, which the Court subsequently denied.   At the request of the parties, we bifurcated the case management dates and deadlines as to proceedings on the issue of whether Abney exhausted administrative remedies from such dates and deadlines on the merits.   In that regard, we set discovery and dispositive motions deadlines as to the exhaustion issue, but we stated that case management dates and deadlines regarding discovery and dispositive motions on the merits as well as trial and pretrial deadlines will be entered at a later time, if necessary, after the exhaustion issue is addressed.

Defendants Younker, Brooks, Snyder, Hills, Hartman, Mallery, Everly, Yarnell, Bumbarger, Booher, Huber, Wertz, Harker, Maxell, Stevens, and Bickell (Commonwealth defendants) filed a partial motion for summary judgment.   They

seek summary judgment as to Counts Two through Five of the complaint as well as Abney's request for declaratory and injunctive relief on the basis that Abney failed to exhaust administrative remedies.   That motion has been fully briefed, and after carefully considering the record and the parties' arguments, we recommend that the motion be granted in part and denied in part.   More specifically, we recommend that the Commonwealth defendants be granted summary judgment as to Count Three (denial of medical care) and Count Five (failure to train and failure to supervise) of the complaint, but that the motion be denied in all other respects.

### III.   Summary Judgment Standard.

The Commonwealth defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

6

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).   When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.   The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Where a party moves for summary judgment on an issue for which he bears the ultimate burden of proof, the moving party faces a difficult road in seeking summary judgment. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted).   A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id*. "Specious objections will not, of course, defeat a motion for summary judgment, but

real questions about credibility, gaps in the evidence, and doubts as to the

sufficiency of the movant's proof, will." *Id.*

## IV.  Discussion.

The Commonwealth defendants contend that they are entitled to summary

judgment as to Counts Two, Three, Four, and Five of the complaint because Abney

failed to exhaust administrative remedies as to the claims in those counts.[1]   The

Commonwealth defendants also contend that Abney failed to exhaust administrative

remedies as to his request for declaratory and injunctive relief.

### A.   The Exhaustion Requirement.

The Prison Litigation Reform Act requires a prisoner to exhaust available

administrative remedies prior to filing an action challenging prison conditions in

court.   The Act provides:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional facility
> until such administrative remedies as are available are
> exhausted.

---

[1] The Commonwealth defendants do not move for summary judgment as to Count One of the complaint, which is the main excessive force claim.   Rather, they assert that, for purposes of the present motion, they accept that Abney exhausted administrative remedies with respect to that use-of-force incident. *See Doc. 60* at 10.

42 U.S.C. §1997e(a).   "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).   "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*   Thus, the benefits of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.   While the exhaustion requirement serves to alert prison officials to a problem, "notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.*

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is

seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).   "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007).   As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006).   In other words, it requires more than simple exhaustion, *i.e.*, more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004).   Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id. at 231*.   The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

**B.   DC-ADM 804.**

The Pennsylvania Department of Corrections (DOC) has implemented an official Inmate Grievance System, which is governed by Administrative Directive 804 (DC-ADM 804).[2]

The parties have submitted two different versions of DC-ADM 804, both with a title page that sets forth the "Date of Issue" as December 1, 2010, and the "Effective Date" as December 8, 2010. *See Doc. 54-3* at 4-26 (version submitted by the Commonwealth defendants) and *Doc. 70* at 2-21 (version submitted by Abney).[3] Abney's counsel asserts that she downloaded the version of DC-ADM 804 submitted by Abney from the DOC's website in the late summer or fall of 2012. *See Doc. 66* at ¶82.   The version submitted by Abney contains notations at the bottom of a number of pages that appear to indicate that the provisions on those pages were issued on "9/13/2011" and effective on "9/20/11." *Doc. 70* at 4-9.   But Abney points to testimony from Lisa Hollibaugh, the facility grievance coordinator at SCI-Smithfield, that sometimes the dates printed on the lower left of the affected

---

2 When we refer to DC-ADM 804, we are referring to both the DOC's policy statement and its accompanying procedures manual.

3 While the versions differ somewhat as to the arrangement of certain provisions, the main difference between them is a provision that is in the version submitted by the Commonwealth defendants, but not in the version submitted by Abney, that deals with the specificity with which a prisoner must name the parties involved in the events that are the subject of the grievance.

page of the grievance policy are not accurate. *Doc. 66* at ¶¶ 46 & 47 and *Doc. 67* at

19 (Hollibaugh Dep. at 11 & 74-75).[4]   Hollibaugh further testified that the DOC

notifies inmates of revisions to policies by issuing a memo to all inmates explaining

the changes to a particular policy. *Doc. 66* at ¶48 and *Doc. 67* at 20 (Hollibaugh Dep.

at 78-79).   She also testified that whatever is on DocNet[5] is the most current

version. *Doc. 67* at 19 (Hollibaugh Dep. at 75).

The version of DC-ADM 804 submitted by the Commonwealth defendants

was attached to the declaration of Constance Green, and referred to by Green in her

declaration. *See Doc. 54-3.*   That version contains notations at the bottom of a

number of pages that appear to indicate that the provisions on those pages were

issued on "12/12/2011" and effective on "12/28/11." *Doc. 54-3* at 9-14.   Green does

not specifically state, however, that the version she submitted was the version in

effect at the time of the events at issue in this case.   Rather, she refers to DC-ADM

804 in the present tense in her declaration.   She does state in her declaration that

"[a]ll inmates within the DOC are provided with notice of the Grievance Policy and

---

4  The Commonwealth defendants object to much of the evidence submitted by
Abney.   Given the narrow issues presented in the partial motion for summary
judgment, much of Abney's evidence is irrelevant at this point.   Thus, we do not
consider it or the defendants' objections to it.   The Commonwealth defendants do
not object, however, to deposition testimony of witnesses, such as Hollibaugh.
5  We assume that DocNet is an internal database within the DOC.

the associated requirements that they must meet in grieving their issues under the same." *Doc. 54-3* at 3, ¶9.

Based on the current record, we are simply not able to say which version of DC-ADM 804 was available to Abney at the time of the events at issue in this case. In that regard, we note that the issue regarding what administrative remedies were available to Abney entails consideration of what was communicated to, or available to, inmates such as Abney about the requirements of DC-ADM 804, not necessarily what version of DC-ADM 804 was on the DOC's website or available to staff on an internal server. *See Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes.").   The summary judgment record does not contain evidence sufficient for the Court to determine what was communicated to or available to Abney about the requirements of DC-ADM 804.   Although Green states in her declaration that inmates are provided with notice of the grievance policy and the associated requirements and Hollibaugh testified that inmates are provided with memos of changes to policies, neither of them state specifically which version of the policy was provided to or available to inmates at the time of the events at issue in this case.   Also, neither party has submitted evidence regarding what the inmate handbook at the relevant time provided.   Nor has any party submitted a copy of any

14

memo explaining the change in wording of DC-ADM 804.   Defendants have the burden of proving failure to exhaust, and part of that burden is proving what administrative remedies were available to the prisoner at the relevant time. Because the Commonwealth defendants have failed to provide evidence from which it can reasonably be determined which policy was in effect and available to Abney at the relevant time, we will use the version of DC-ADM 804 provided by Abney.

DC-ADM 804 sets forth a three-tier administrative remedy system.   Under DC-ADM 804, a prisoner is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. *DC-ADM 804(1)(A)(6)* and *(13) (Doc. 70* at 4-5).   In limited circumstances, the Facility Grievance Coordinator may extend the time for the filing of a grievance. *DC-ADM 804(1)(B)(3)* and *(4) (Doc. 70* at 6).   The prisoner is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. *DC-ADM 804(2)(A)(1)(a) (Doc. 70* at 11). From there the prisoner must appeal to the Secretary's Office of Inmate Grievances and Appeals. *DC-ADM 804(2)(B)(1) (Doc. 70* at 13-14).

DC-ADM 804 addresses what a grievance must contain:

> The inmate must include a statement of the facts relevant to the claim.   The text of the grievance must be legible, understandable, and presented in a courteous manner.   The statement of facts must not exceed two pages and must be

15

> handwritten or typed on writing paper (one DC-804, Part 1 and
> one one-sided 8½" x 11" page).   In **Section B** of the **DC-804,
> Part 1,** the inmate should include information on any attempt to
> resolve the matter informally.   The inmate will also specifically
> state any claims he/she wishes to make concerning violations of
> Department directives, regulations, court orders, or other law.
> If the inmate desires compensation or other legal relief normally
> available from a court, the inmate shall request the specific relief
> sought in his/her initial grievance.

*DC-ADM 804(1)(A)(11) (Doc. 70* at 5).   Further, "[a] grievance must be filed with

the Facility Grievance Coordinator at the facility where the grievance event

occurred." *DC-ADM 804(1)(A)(14) (Doc. 70* at 5).

### C.   Abney's Grievances.

The Commonwealth defendants submitted a declaration from Candice Green,

the Assistant to the Superintendent at SCI-Huntingdon, in which Green outlines the

grievance procedure set forth in DC-ADM 804. *Doc. 54-3* at ¶¶4-8.   Green also

states that, in October of 2012, Abney filed a grievance about the incident on June

29, 2012, but that grievance was rejected as untimely. *Id.* at ¶¶10-11.   According to

Green, the October 2012 grievance was the only grievance received by

SCI-Huntingdon regarding the incident. *Id.* at ¶12.

Abney contends, however, that, in addition to the October 2012 grievance, he

filed a grievance on July 2, 2012 about the incident. *Doc. 61 (Statement of Material*

*and Undisputed Facts by the Commonwealth Defendants)* at ¶16 and *Doc. 66*

(*Plaintiff's Response to Commonwealth Defendants' Statement of Facts and*

*Plaintiff's Counter Statement of Facts)* at ¶16.   In the July 2, 2012 grievance,

Abney wrote:

> On 6-29-12 on A-Block[,] I was being pat searched by C.O.
> Brooks[,] and Sgt. Younker ask me for my I.D.   So I reached
> inside my T[-]shirt to produce my I.D. and put it on the desk.
> Sgt. Younker back[ed] away from the I.D. like it had some type
> of disease.   So I picked up the I.D.[,] and Sgt. Younker stated in
> a harsh manner and tone[:] put the I.D. back[.]   [A]nd I said you
> don't have to talk to me like that[,] and he stated back I'll talk to
> you any way I want, and the next thing I know I'm on the floor
> [and] 6 or 7 C.O.'s [are] smashing me to the floor face down
> [and] then some unknown C.O. kick[ed] me in the face.   I was
> taken to the RHU[.]   A nurse was there cause my face was
> swollen and I was bleeding profusely[.]   [S]o I had to be flown
> out to the hospital[—]to the trama unit[.]   [A]nd I was told that I
> had a mild concussion.   Another doctor told me that my nose is
> slightly off center.   I left the hospital and was brought to SCI
> Smithfield in [the] Medical Dept.
> Relief: I'm asking for one hundred thousand dollars $100,000.00

*Id*. at ¶17 and *Doc. 69* at 24.

Abney contends that, on July 2, 2012, while at SCI-Smithfield, he filled out

the grievance form, placed it in an envelope addressed to Connie Green, the

grievance coordinator at SCI-Huntingdon, and placed it in the door of his cell to be

mailed. *Doc. 61 (Statement of Material and Undisputed Facts by the Commonwealth*

*Defendants)* at ¶19 and *Doc. 66 (Plaintiff's Response to Commonwealth*

*Defendants' Statement of Facts and Plaintiff's Counter Statement of Facts)* at ¶19.

According to Abney, he put the grievance in a "state envelope," which he described

as "free postage." *Id.*   Abney contends that a corrections officer picked up the

envelope from his door that same day, but Abney never received a response to that

grievance. *Id.* at ¶¶20-21.   As Abney is the nonmoving party, we accept for

purposes of the present summary judgment motion that he properly filed the July 2,

2012 grievance.[6]   And because he never received a response to that grievance, he

could not appeal under DC-ADM 804. *See DC-ADM 804(2)(A)(1)(b) (Doc. 70* at

11*)* ("The Initial Review **Response/Rejection** from the **Facility Grievance**

**Coordinator/designee** must be received by the inmate before any appeal to the

Facility Manager can be sought.")(emphasis in original).

### D.   Counts Three and Five of the Complaint.

The Commonwealth defendants contend that even accepting that Abney filed

the July 2, 2012 grievance, he failed to exhaust available administrative remedies as

---

6  Abney's counsel argues that there was not a secure lock box for prisoners to
deposit grievances in area of SCI-Smithfield where Abney was housed and that
DC-ADM 804 does not define what it means to "file" a grievance when the prisoner
is in one prison but complaining about events in another prison.   Because, based on
the summary judgment evidence we accept that Abney properly filed the July 2nd
grievance, there is no need to address those issues.   Moreover, it is clear that Abney
correctly determined that he needed to mail his grievance from SCI-Smithfield,
where he was housed at the time, to SCI-Huntingdon, where the incident occurred.

to his claims in Counts Three and Five of the complaint because his grievance fails to mention those claims.[7]   To recap, Count Three is an Eighth Amendment claim based on defendants Younker, Brooks, Lehman, Snyder, Hills, Hartman, Mallery, Everly, Yarnell, Bumbarger, Booher, Huber, Wertz, Harker, and Maxell's failure to provide Abney with medical care, and Count Five is a failure-to-train and failure-to-supervise claim against defendants Stevens and Bickell.

DC-ADM 804 provides that the "inmate will also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804(1)(A)(11).   Because Abney did not mention any denial of medical care or any failure to train and supervise in his grievances, the defendants contend that he failed to exhaust available administrative remedies as to those claims.   We agree.

The July 2, 2012 grievance does not mention or provide any facts about a denial of medical care or a failure to train or failure to supervise.   There are no facts in the grievance to put prison officials on notice that Abney was raising any such claims.   As such, as to those claims, the grievance did not serve the purposes of the exhaustion requirement, *i.e.*, to alert prison official to a problem and provide them an

---

[7]  The Commonwealth defendants make the same argument with respect to Counts Two and Four.   We address that argument later.

opportunity to resolve the dispute concerning the exercise of their responsibilities before being brought into court.   Thus, Abney has failed to exhaust available administrative remedies as to those claims, and we will recommend that the Commonwealth defendants be granted summary judgment as to Counts Three and Five of the complaint.

### E.   Counts Two and Four of the Complaint.

Count Two of the complaint is an Eighth Amendment failure-to-intervene claim against defendants Bumbarger, Booher, Huber, Wertz, Harker, and Maxell. And Count Four is an Eighth Amendment excessive force claim against defendants Booher, Huber, Wertz, and Maxell based on the use of restraints and the dragging and dropping of Abney.   The Commonwealth defendants contend that Abney failed to exhaust administrative remedies as to these counts for a number of reasons.

### 1. Failure to Mention Claims in the Grievance.

The Commonwealth defendants contend that because Abney did not mention a failure to intervene or the handcuffing and dragging and dropping in his grievance, he failed to exhaust available administrative remedies as to those claims.   We disagree.

Abney did not specifically mention a failure to intervene or the handcuffing and dragging and dropping in his grievance.   But Abney complained about the use of force, and the failure to intervene by some of the defendants to stop other defendants from using excessive force can be seen as a part of the use of force about which Abney complained in his grievance.   Similarly, the handcuffing and dragging and dropping by some of the defendants can be seen as a continuation of the use of force about which Abney complained in his grievance.   And so, while the grievance could have been more specific, it served the purpose of the exhaustion requirement of alerting prison officials to the problem and giving them the opportunity to correct it before being brought into court.   Thus, we conclude that the defendants should not be granted summary judgment on Count Two (failure to intervene claim) and Count Four (excessive force based on handcuffing and dragging and dropping) of the complaint on the basis that Abney did not specifically mention those claims in his grievance.

### 2.   Failure to Name Defendants in the Grievance.

The Commonwealth defendants contend that Abney failed to exhaust administrative remedies as to Counts Two and Four for an additional reason: he failed to name in his grievance the defendants he names in those counts.   It is

undisputed that Abney's grievance did not identify any of the defendants named in Counts Two and Four of the complaint.   But given the circumstances of this case, we conclude that that failure does not amount a procedural default barring Abney's claims.

42 U.S.C. §1997(e) does not impose a name-all-defendants requirement, and "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 217 & 219.   Rather, the inmate is required to comply the requirements of the prison's grievance system. *Id.* at 219.   Here, as previously set forth, DC-ADM provides that "[t]he inmate must include a statement of the facts relevant to the claim" in his grievance. *DC-ADM 804(1)(A)(11) (Doc. 70* at 5).[8]

In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Third Circuit analyzed a prior version of DC-ADM 804.   That prior version of DC-ADM 804 provided, in pertinent part: "The inmate shall include a statement of the facts relevant to the claim. . . . The inmate should identify any persons who may have information that

---

[8]  The version of DC-ADM 804 that the Commonwealth defendants submitted additionally provides that "[t]he inmate shall identify individuals directly involved in the event(s)." *See Doc. 54-3* at 10.   As set forth above, the defendants have not established that Abney was aware of that version such that he was informed of that requirement, and, as such, we accept the version of DC-ADM 804 submitted by Abney.

could be helpful in resolving the grievance." *Id.* at 233.   In *Spruill,* the Third
Circuit "recognized that a grievance under the DOC's administrative review
system should identify specific persons, if practicable." *Chimenti v. Mohadjerin*,
3:CV-01-0273, 2008 WL 2551603, at *4 (M.D. Pa. June 24, 2008).   "It held that
an unexplained failure to identify a responsible prison official in a grievance may
constitute a procedural default of the claim." *Id.*   Thus, "in the absence of any
justifiable excuse, a Pennsylvania inmate's failure to properly identify a
defendant constitute[s] a failure to properly exhaust his administrative
remedies[.]" *Williams v. Pennsylvania, Dep't of Corr.*, 146 F. App'x 554, 557 (3d
Cir. 2005).

     In this case, Abney suggests that it was not practicable for him to identify
the defendants because he was unconscious or only semiconscious at certain
times during the assault, and, thus, he did not know who was involved in the
incident in question.   Abney has adequately explained his failure to name the
defendants in his grievance.   Because it was not practicable for Abney to identify
the defendants, he has not procedurally defaulted his claims. *See Robinson v.
Johnson,* 343 F. App'x 778, (3d Cir. 2009)(holding that inmate did not
procedurally default as to a former Secretary of the DOC and a former
Superintendent on a claim challenging a policy where the defendants did not meet

their burden of demonstrating that it was practicable for the inmate to identify

them as the relevant policymakers); *Sanders v. Beard,* No. 3:09-CV-1384, 2013

WL 1703582, at *7 (M.D.Pa. June 4, 2012)("Even if the prison's grievance

review process had not identified Defendants Felton and Varner, Plaintiffs'

failure to name them would be excused because they have explained that it was

not practicable for them to name or identify the individuals responsible for

maintenance at the prison."); *Victor v. SCI Smithfield*, 3:08-CV-1374, 2011 WL

3584781, at *6 (M.D. Pa. Aug. 12, 2011)("It is only the 'unexplained failure to

identify a responsible prison official in a grievance [that] constitutes a procedural

default of the claim.'")(quoting *Freeman v. Dep't of Corr.,* 2011 U.S. Dist.

LEXIS 17045, *12 (M.D.Pa. 2011)).

Moreover, we note that the "'primary purpose of a grievance is to alert

prison officials to a problem, not to provide personal notice to a particular official

that he may be sued.'" *Williams v. Beard,* 482 F.3d 637, 640 (3d Cir.

2007)(quoting *Jones,* 549 U.S. at 219).   Abney's grievance succeeded in alerting

prison officials to the alleged problem—the alleged use of excessive force—and

Abney should not be deemed to have procedurally defaulted his claims by failing

to identify the defendants when he contends that the force was so excessive that

he was unconscious or only semiconscious.[9]

### F.   Request for Declaratory and Injunctive Relief.

The Commonwealth defendants contend that Abney's request for declaratory

and injunctive relief should be dismissed.   They cite that portion of DC-ADM 804

that provides that "[i]f the inmate desires compensation or other legal relief normally

available from a court, the inmate shall request the specific relief sought in his/her

initial grievance." *DC-ADM 804(1)(A)(11) (Doc. 70* at 5).   Because Abney did not

mention either declaratory or injunctive relief in his grievance, the defendants

contend that they are entitled to summary judgment as to such relief.

There is nothing in the provision cited by the Commonwealth defendants,

however, that would put Abney on notice that he must specifically request

---

[9] Abney also asserts that he exhausted administrative remedies through DC-ADM 001, relating to the reporting of inmate abuse.   Because we conclude that Abney has not procedurally defaulted his claims as to Counts Two and Four, we need not consider whether Abney exhausted administrative remedies through DC-ADM 001. We note that DC-ADM 001 specifically excludes from the definition of "abuse," and thus from the scope of DC-ADM 001, the following: "claims of inadequate medical or intentionally denied medical care" and "harassment or nonperformance of duty by a staff member." *DC-ADM 001* (Glossary of Terms at ¶2) (*Doc. 71* at 14, ¶2). Thus, DC-ADM 001 clearly would not apply to Abney's claims in Counts Three and Five, addressed earlier, and we do not understand Abney to be so arguing.

declaratory or injunctive relief in his grievance.    The cited provision refers to "compensation or other legal relief," but neither declaratory nor injunctive relief is compensation or "legal relief."    Declaratory and injunctive relief are forms of equitable relief, not legal relief. *See* 1 D. Dobbs, Law of Remedies, §1.2, p. 11 (2d ed. 1993)(discussing difference between legal relief and equitable relief).    Because the provision cited by the Commonwealth defendants would not have put Abney on notice that he had to specifically request declaratory and injunctive relief as opposed to "compensation or other legal relief," we conclude that Abney did not procedurally default his request for declaratory and injunctive relief. *See generally Sanders v. Beard,* No. 3:09-CV-1384, 2013 WL 1703582, at *6 (M.D.Pa. June 4, 2012)(dismissing claims for monetary damages because such was not mentioned in the grievance but allowing claims for injunctive relief to remain in the case even though the grievances at issue did not request any specific relief).

### G.   Other Arguments.

The Commonwealth defendants did not move for summary judgment as to Count One of the complaint.    Despite not raising the exhaustion issue as to Count One in their summary judgment motion, the Commonwealth defendants left open the possibility that they would raise that issue at a later time. *See Doc. 60* at 10 ("For

purposes of this motion only, the Commonwealth defendants accept that Abney has

exhausted his administrative remedies with respect to the use of force incident that

occurred on A-Block on June 29, 2012.").   In response, Abney argues that the

Commonwealth defendants have waived the defense of failure to exhaust as to

Count One and that they cannot raise that defense at a future time.[10]   The

Commonwealth defendants reply that they have not waived the defense.

"Under the PLRA, exhaustion is a precondition for bringing suit under

§ 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013).   It is a

"'threshold issue that *courts* must address to determine whether litigation is being

conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in

original)(quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)).   There is no

right to have a jury decide the issue of exhaustion. *Id.* at 271.   Rather, "exhaustion is

a question of law to be determined by a judge, even if that determination requires the

resolution of disputed facts." *Id.* at 269.   Given that exhaustion is a threshold issue,

it makes "sense from an efficiency standpoint that exhaustion determinations be

made before discovery, or with only limited discovery." *Id.* at 271, n.5.

---

10  Abney also argues that defendant Lehman waived the exhaustion defense.   As
defendant Lehman is not a party to the partial motion for summary judgment, he
understandably has not responded to Abney's argument.

In the joint case management plan and at the case management conference, the parties requested a stay of proceedings on the merits until such time as the issue of exhaustion of administrative remedies was resolved.   We granted that request to the extent that case management dates regarding discovery and dispositive motions on the issue of exhaustion were entered. *Doc. 25* at 1.[11]   In that regard, we ordered that discovery regarding exhaustion be completed by January 31, 2014, and that dispositive motions and supporting briefs on the issue of exhaustion be filed by February 28, 2014. *Id.* at 2.   We noted that case management dates and deadlines regarding discovery and dispositive motions on the merits as well as trial and pretrial deadlines would be entered at a later time, if necessary, after the exhaustion issue is addressed. *Id.* at 1.

It was the intent of the undersigned that the issue of failure to exhaust administrative remedies would be finally decided before the case would proceed to the merits phase.   Thus, we expected that all issues regarding failure to exhaust would be raised by the February 28, 2014 deadline set in the case management order. Nevertheless, the case management order only specifically set a deadline for dispositive motions on the issue of exhaustion.   And the defendants point out that

---

11  We did not simply stay all proceedings pending resolution of the exhaustion issue because there was at the time a pending partial motion to dismiss, which had already been fully briefed.

the Third Circuit has concluded that failure to raise the affirmative defense of failure

to exhaust in a timely dispositive motion does not completely waive the defense, but

waives only the ability of the defendants to receive summary adjudication of that

defense. *Drippe v. Gototweski,* 434 F. App'x 79, 81 (3d Cir. 2011).   Thus, we reject

Abney's contention that the defendants have waived the defense as to Count One.

Upon remand after the Court considers this Report and Recommendation, we will

set a deadline for the defendants to seek a plenary hearing on any remaining

exhaustion issues.

   In addition to arguing waiver, Abney contends that the supervisory

defendants—Bickell, Stevens, Maxwell, and Harker—are estopped from raising the

exhaustion defense because they sent him to be housed at a location within

SCI-Smithfield that was known to lack mandatory safeguards against the

confiscation of outgoing grievances.   A "party claiming . . . estoppel must have

relied on its adversary's conduct 'in such a manner as to change his position for the

worse' . . . and that reliance must have been reasonable in that the party claiming the

estoppel did not know nor should it have known that its adversary's conduct was

misleading. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59

(1984)(footnotes and citations omitted).   Here Abney argues that the supervisory

defendants engaged in misrepresentation, *i.e.,* the pretense that outgoing mail placed

29

in the door of a cell would be handled properly and arrive at its destination.   And he

argues that he acted to his detriment by assuming that prison officials who later

interviewed him had knowledge of his initial grievance, by foregoing the attempt to

follow up on the lack of response to his initial grievance, and by filing another

grievance.

Abney's argument that his placement in a particular cell was a

misrepresentation seems to stretch the concept of misrepresentation beyond any

recognizable limits.   Moreover, even assuming for the sake of argument that he

could show a misrepresentation, he has not presented evidence to support his

contention that he detrimentally relied on such a misrepresentation.   Accordingly,

we do not recommend that the supervisory defendants are barred by equitable

estoppel from asserting the exhaustion defense.


**V.   Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the

Commonwealth defendants' motion (doc. 52) for partial summary judgment be

granted in part and denied in part.   It is recommended that the Commonwealth

defendants be granted summary judgment as to Count Three and Count Five of the

complaint.   It is recommend that the Commonwealth defendants' motion for partial

summary judgment otherwise be denied.   Finally, it is recommended that the case

be remanded to the undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of August, 2014.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

31