IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE ABNEY, | : | |
|     Plaintiff | : | No. 1:13-cv-01418 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| CALEB YOUNKER, et al., | : | (Magistrate Judge Schwab) |
|     Defendants | : | |

**MEMORANDUM**

    Before the Court is Magistrate Judge Schwab's Report and Recommendation (Doc. No. 95), recommending that the Court grant in part and deny in part the sixteen Commonwealth Defendants'[1] motion for partial summary judgment on the issue of failure to exhaust administrative remedies (Doc. No. 52). Magistrate Judge Schwab recommends that the Court grant summary judgment to the Commonwealth Defendants as to counts III and V of Plaintiff's complaint, but deny it in all other respects. (Doc. No. 95 at 30-31.) Magistrate Judge Schwab also recommends a finding that the Commonwealth Defendants have not altogether waived their failure-to-exhaust affirmative defense. (Id. at 31.) Defendants do not object to Magistrate Judge Schwab's recommendations, but Plaintiff objects to the portions of the Report and Recommendation unfavorable to him. (Doc. No. 97.) For the reasons that follow, the Court will overrule Plaintiff's objections and adopt Magistrate Judge Schwab's Report and

---

[1] These sixteen individual defendants are employees within the state prison system. They are: Caleb Younker, Robert Brooks, Richard Snyder, Justin Hills, D. Hartman, William Mallery, Marie Everly, Waylon Yarnell, Christopher Bumbarger, James Booher, Matthew Huber, Rex Wertz, S. Harker, M. Maxwell, Captain Stevens, and Tabb Bickell. (Doc. No 52.) In this memorandum, the Court refers to these men and women collectively as Commonwealth Defendants or Defendants. Separately represented defendant Sergeant Nathan Lehman does not join this motion.

1

Recommendation.

## I. BACKGROUND

This case concerns an incident at State Correctional Institution – Huntingdon ("SCI-Huntingdon") during Plaintiff's incarceration there. (Doc. No. 95 at 2.) On June 29, 2012, after a verbal exchange, Plaintiff punched Defendant corrections officer Younker in the mouth. (Doc. No. 1 at 7.) Defendant Younker then tackled Plaintiff, pinning him face down on the floor. (Id.) Plaintiff maintains that once he was on the ground, several other prison guards joined in beating him, continuing even after he lost consciousness. (Doc. No. 95 at 2-3.) According to his complaint, Plaintiff "lost consciousness completely while the officers were beating and kicking him," (Doc. No. 1 ¶ 70), and he "drifted in and out of consciousness" while being restrained and dragged through the prison to the restricted housing unit. (Id. ¶ 98.) Plaintiff claims he regained consciousness only to begin convulsing shortly before prison staff called an ambulance. (Id. ¶¶ 111, 114.) A helicopter transported Plaintiff to a trauma center in Altoona, Pennsylvania, where he remained overnight before being moved to SCI-Smithfield. (Doc. No. 95 at 3.) In addition to those officers who participated in the physical beating, Plaintiff has sued prison employees and administrators who he claims failed to intervene to stop the attack, failed to provide necessary medical care during and after the altercation, failed to inform his next of kin of his injuries, and failed to train the corrections officers. (Id. at 2-3.)

Grievance reports, one to two-page forms completed by inmates and submitted to prison officials, are required as part of the prison system's internal administrative procedures for addressing complaints. (Doc. Nos. 55 ¶¶ 10-15; 66 ¶¶ 10-15.) Grievance protocol requires the inmate to provide a "brief, clear statement" describing his or her complaint, which the

administration then evaluates. (Doc. No. 69 at 24.) An inmate may appeal the administration's disposition of his or her grievance twice, and an inmate is ordinarily required to appeal both times in order to fulfill the procedural requirements to file a federal lawsuit. (See Doc. No. 70 at 14.) On July 2, 2012, Plaintiff reported the incident to the administrators at SCI-Huntingdon by filing a grievance report.[2] (Doc. No. 55 ¶¶ 16-21; 66 ¶¶ 16-21.) In the grievance report, Plaintiff specifically names Defendants Younker and Brooks as taking part in the physical abuse, and in addition he alleges that "6 or 7 [corrections officers were] smashing me to the floor face down then some unknown [corrections officer kicked] me in the face." (Doc. No. 55 ¶ 17.)

Plaintiff initiated this lawsuit on May 24, 2013, by filing a complaint against seventeen named defendants and three unnamed defendants. (Doc. No. 95 at 1.) At the request of the parties, Magistrate Judge Schwab bifurcated the proceedings, setting discovery and dispositive motion deadlines for the exhaustion defense only. (Id. at 5.) Deadlines for dispositive motions on the merits, as well as other trial and pretrial matters were to be "entered at a later time, if necessary, after the exhaustion issue [was] addressed." (Id.) Magistrate Judge Schwab explains that "[i]t was the intent of the undersigned that the issue of failure to exhaust administrative remedies would be finally decided before the case would proceed to the merits phase." (Id. at 28.) After much discovery, the Commonwealth Defendants filed the present motion for summary judgment on February 28, 2014. (Doc. No. 52.) Defendants seek summary judgment as to four counts from the complaint, including count III for Eighth Amendment failure-to-provide-medical-care, and count V for failure-to-train and failure-to-supervise. (Doc. No. 95 at 4.) Defendants

---

[2] The parties dispute whether Plaintiff properly filed this grievance (or filed it at all), but for the limited purpose of this summary judgment motion, Defendants have conceded that Plaintiff properly filed his July 2, 2012 grievance. (Doc. No. 55 ¶¶ 16-21.)

argue that Plaintiff has not exhausted his administrative remedies with respect to those claims, so they must be dismissed under the Prisoner Litigation Reform Act of 1995, 110 Stat. 1321-71 ("PLRA"). (Doc. No. 60 at 8.) In his opposition brief and in his objections to the Report and Recommendation, Plaintiff urges the Court to find that Defendants have waived for all purposes the affirmative defense of failure to exhaust administrative remedies. (Doc. Nos. 95 at 27; 97 at 13-15.) Magistrate Judge Schwab issued a Report and Recommendation on August 4, 2014, recommending that the Court grant Defendants' motion with regard to counts III and V, denying it in all other respects. (Id. at 30-31.) Magistrate Judge Schwab also recommends that Defendants be permitted to raise the exhaustion defense and request a plenary hearing about it. (Id.) Defendants do not object to the recommendations, but Plaintiff objects to Magistrate Judge Schwab's recommendations that counts III and V be dismissed and that Defendants are still entitled to raise the affirmative defense of failure to exhaust.[3]

## II.   LEGAL STANDARD

The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b), provide that any party may file written objections to a magistrate's proposed findings and recommendations. In deciding whether to accept, reject, or modify the Report and Recommendation, the Court is to make a de novo determination of those portions of the Report and Recommendation to which objection is made. 28 U.S.C. § 636(b)(1); M.D. Pa. L.R. 72.3.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

---

[3] Magistrate Judge Schwab also recommends that Defendants' motion be denied as to counts II and IV and as to declaratory and injunctive relief. (Doc. No. 95 at 30-31.) Because no party objects to those recommendations and because the Court finds no error with Magistrate Judge Schwab's findings, the Court will adopt those recommendations and deny summary judgment on those counts.

warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Upon a motion for summary judgment, a court asks whether the evidence presents a sufficient disagreement to require submission to the jury, or whether either party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that demonstrates the absence of any genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support their adversary's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. A court need not credit evidence that is merely conclusory or speculative. Anderson, 477 U.S. at 249-50. For the non-moving party to avoid summary judgment, it must produce more than a scintilla of supporting evidence and more than some metaphysical doubt as to the material facts.

Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

Plaintiff objects to Magistrate Judge Schwab's recommendations that summary judgment be granted for the Defendants as to counts III and V of the complaint. (Doc. No. 97 at 3.) Plaintiff argues that the Report and Recommendation "disregards the rule that a completed administrative investigation cures incomplete exhaustion when the prison itself has thwarted the grievance process, as here." (Id.) In addition, Plaintiff argues that any lack of detail in his grievance was justifiable, so his grievance should be accepted as to all counts. (Id.) Last, Plaintiff objects to Magistrate Judge Schwab's recommendation that Defendants be able to request a plenary hearing on the issue of failure to exhaust; Plaintiff argues instead that Defendants have waived that defense altogether. (Id.)

### A.   The exhaustion requirement

A prisoner is required to exhaust all prison administrative remedies, including grievance procedures, prior to bringing an action under federal law to challenge prison conditions, and the exhaustion requirement applies to claims of excessive force. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). This means that an inmate must comply with the prison's "deadlines and other critical procedural rules" for resolving the inmate's complaints in-house before he or she is permitted to file suit in federal court. Woodford v. Ngo, 548 U.S. 81, 90-92 (2006). The exhaustion requirement is meant "to eliminate unwarranted federal-court interference with the administration of prisons [by] afford[ing] corrections officials time and

opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) (quoting Porter, 534 U.S. at 525).  In addition, requiring exhaustion is meant to reduce the quantity of frivolous prisoner suits, while facilitating due consideration of meritorious claims.  Id. at 94.  Congress enacted the PLRA to curb baseless prison litigation, strengthening considerably the existing exhaustion requirement by making exhaustion mandatory for prisoners and removing the requirement from the discretion of district courts.  Woodford, 548 U.S. at 84-85.  The failure to exhaust administrative remedies is an affirmative defense for which the defendants bear the burden of proof.  Jones v. Bock, 549 U.S. 199, 211-212 (2007).  In the grievance context, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

The Court's present inquiry concerns only whether or not Plaintiff provided "the level of detail necessary," to properly exhaust his administrative remedies.[4]  Id.  The Pennsylvania Department of Corrections maintains an official policy that governs grievance procedures at state facilities like SCI-Huntingdon.[5]  (Doc. 95 at 12); (Doc. No. 70.)  In relevant part, the grievance

---

[4] As noted above, there remain unresolved questions surrounding the exhaustion requirement, such as whether or not Plaintiff's July 2, 2012 grievance was properly filed.  (See Doc. No. 95 at 18 n.6.)  However, because Defendants have conceded for the purposes of this motion that Plaintiff's July 2, 2012 grievance was properly filed, the only relevant part of the grievance policy concerns whether or not that grievance was sufficiently detailed.  (Id.)

[5] The parties have submitted different editions of the policy; Magistrate Judge Schwab accepted Plaintiff's submission as the operative policy for the disposition of the current motion, and in the absence of an objection, the Court will do the same.  (Doc. No. 95 at 12.)

policy mandates that an inmate include a statement of relevant facts, as well as "any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law." (Doc. No. 70 at 5.) "If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance." (Id.)

### 1. Count III of the complaint

Magistrate Judge Schwab recommends that because Plaintiff's grievance did not mention any failure to provide medical assistance on the part of prison staff, the Court should find count III unexhausted and dismiss it. (Doc. No. 95 at 18-20.) Plaintiff objects, arguing that the substance of Plaintiff's federal claims was fully investigated outside the grievance policy, so under Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000), he has duly exhausted his administrative remedies on the failure to provide medical assistance. (Doc. No. 97 at 11.) According to Plaintiff, the "two administrative investigations, with their exhaustive reports, cure the omission of [failure to provide medical assistance] allegations from Abney's initial written grievance." (Doc. No. 97 at 11.) These two documents emerged as a result of separate investigations pursuant to the abuse reporting protocol and the extraordinary event protocol that the prison system maintains. (See Doc. Nos. 73, 74.) The abuse protocol explicitly excludes from its ambit "claims of inadequate medical or intentionally denied medical care," and "harassment or nonperformance of duty by a staff member." (Doc. No. 95 at 25.) However, Plaintiff claims that these investigations do not limit themselves to the official protocols, and that "[t]he lengthy reports show that the prison knew full well about all dimensions of the problem, including the fact that Defendants were deliberately indifferent to a critical need for medical assistance." (Doc. No. 97

at 10-11.)

Plaintiff argues that Camp should control. In that case, the United States Court of Appeals for the Third Circuit observed that the prisoner-plaintiff "faced something of a Catch-22 situation" because the prison officials had both blocked his access to the grievance system and separately considered his grievance on the merits, yet they still raised the failure-to-exhaust defense. Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). That plaintiff's complaints had "been fully examined on the merits by the ultimate administrative authority and [had] been found wanting." Id. at 281 (emphasis in original). However, Camp does not control here. Plaintiff claims that two reports constitute exhaustion: Plaintiff's Exhibits K and L. (Doc. No. 97 at 11.) Exhibit K is the administrative report that the Office of Special Investigations and Intelligence compiled in response to Plaintiff's allegations of abuse. (Doc. No. 73 at 2.) The abuse policy specifically excludes failure to provide medical care from its purview, and Plaintiff points to no specific finding in the report regarding the necessity of providing medical care or the failure to do so. (See Doc. No. 97 at 11) ("[T]he abuse policy, DC-ADM-001, does not cover [count III's] allegations."). As a result, Exhibit K cannot serve to exhaust Plaintiff's administrative remedies as to count III for failure to provide medical treatment. Exhibit L is an "Extraordinary Occurrence Report," produced by Defendant Superintendent Bickell as a discovery response. (Doc. No. 74.) This document cannot serve to exhaust administrative remedies as to count III, because there is no indication that this "Extraordinary Occurrence Report" is the decision of an "ultimate administrative authority," as contemplated by Camp,[6] and because Plaintiff alludes to

---

[6] Camp provides little guidance on who constitutes the "ultimate administrative authority" in any particular context, but the Court observes that the prison grievance policy provides for "Final Review" to a special "Secretary's Office of Inmate Grievances and Appeals."

no specific information from the report that could be relevant to the medical treatment Plaintiff required or received. (See id.) The Court observes that Camp has been cited most recently for the proposition that when an untimely grievance is accepted and decided on the merits, it may nevertheless serve to exhaust administrative remedies. Spada v. Martinez, 13-4205, 2014 WL 4056924, at *3 (3d Cir. Aug. 18, 2014). The Court is not convinced that Camp may be marshaled to cure an insufficiently detailed but properly filed grievance. For these reasons, the Court will overrule Plaintiff's objection, adopt Magistrate Judge Schwab's recommendation, and grant summary judgment to Defendants as to count III.

### 2. Count V of the complaint

Magistrate Judge Schwab also recommends that the Court dismiss Plaintiff's failure-to-train-and-supervise claim in count V, because he did not mention any such failure in his July 2, 2012 grievance report. (Doc. No. 95 at 19.) Plaintiff objects that exhaustion has been satisfied under Camp, because the two administrative reports satisfy the requirement, and because Plaintiff justifiably lacked requisite knowledge as to the complex supervisory relationships at the prison. (Doc. No. 97 at 12.) Plaintiff again invokes Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) to support his position.

As explained above, the Court is not satisfied that the administrative reports could serve to exhaust Plaintiff's remedies. Exhibit K, promulgated pursuant to the abuse protocol, excludes "nonperformance of duty by a staff member," and in no way concerns any potential failure to train or supervise. (See Doc. No. 71 at 14.) Neither is there any sufficient indication that Exhibit

---

(Doc. No. 70 at 14.) In Camp itself, review by the "Office of the Secretary of Corrections" sufficed to exhaust remedies. See 219 F.3d at 280-81.

L, the "Extraordinary Occurrence Report," could constitute a final disposition from an "ultimate administrative authority" as required under Camp. See 219 F.3d at 281. Further, Plaintiff has identified no specific fact from either report to support his contention that these reports served to exhaust his medical claim and his inadequate training claim. (See Doc. No. 97 at 9-12.) Plaintiff states that, "[o]n the contrary, the administrative investigations whose reports appear as Exhibits K and L do indeed set forth detailed information that defeats the non-exhaustion defense with respect to Count Three," but Plaintiff does not identify what that detailed information is. (See id.)

In addition, Plaintiff claims that "[i]nmates are kept in the dark about prison staff relationships," so Plaintiff is "incapable of stating, on his own, exactly how the supervisory lapses led to his injury." (Doc. No. 97 at 12.) According to Plaintiff, this justifiable ignorance made complying with the grievance policy impracticable. Although Plaintiff need not "name all defendants" in order to comply with the grievance procedures, Jones, 549 U.S. at 217, he is required to "properly exhaust" his administrative remedies, Woodford v. Ngo, 548 U.S. 81, 94-95 (2006). A failure to train or supervise cause of action is not "fairly within the compass," of Plaintiff's grievance, a document that makes no mention of training or supervisory relationships. See Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) ("The primary purpose of a grievance is to alert prison officials to a problem . . .") (internal quotations omitted). If Plaintiff believed that his injuries were caused by inadequate training or supervision, he could have indicated as much in his grievance. The Court acknowledges the difficulty in requiring inmates to raise a failure to train or to supervise in a prison grievance, because it may not be intuitive to blame an incident of violence or other prison condition on the failure to train or supervise corrections officers. However, the PLRA's exhaustion requirement admits of no exception for highly technical or

unfairly subtle claims.  Accordingly, the Court will overrule Plaintiff's objection, adopt Magistrate Judge Schwab's recommendation, and grant summary judgment to Defendants as to count V.

### B. Waiver of failure-to-exhaust defense

Magistrate Judge Schwab recommends that Defendants be allowed to request a plenary hearing on the issue of failure to exhaust administrative remedies.  (Doc. No. 95 at 29.)  Plaintiff objects, arguing that by failing to raise the defense of exhaustion as to all counts of Plaintiff's complaint, Defendants have waived the affirmative defense for all purposes.  (Doc. No. 97 at 13-15.)  Plaintiff contends that by bringing a partial motion for summary judgment so that exhaustion as to count I of the complaint is not before the Court, Defendants have engaged in "maneuvering to prevent early decision on the issue of exhaustion of administrative remedies."  (Doc. No. 97 at 13.)

The question of an inmate's failure to exhaust administrative remedies occupies an unusual procedural territory.  While the Seventh Amendment confers the right to a jury trial in most "Suits at common law," U.S. Const. amend. VII, "a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on the issue of exhaustion."  Small v. Camden Cnty., 728 F.3d 265, 270 (3d Cir. 2013).  As such, "just as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."  Id. at 269-270 (internal citations omitted) (emphasis in original).  However, district courts have held that defendants do not waive the failure-to-exhaust defense by raising it in the first instance on a motion for summary judgment rather than in an answer or pre-answer motion.  E.g., Wakely v. Giroux, No. 12-cv-2610, 2014

WL 1515681, at *1 (M.D. Pa. April 15, 2014); <u>Baker v. Beard</u>, No. 05-cv-281, 2006 WL 1725557, at *3 (M.D. Pa. June 21, 2006).

In his sur-reply brief, Plaintiff recognizes that "[d]istrict courts have broad discretion when it comes to case management and docket control."  (Doc. No. 94 at 19) (citing <u>Drippe v. Tobelinski</u>, 604 F.3d 778, 783 (3d Cir. 2010).  Nowhere does Plaintiff claim that the law <u>requires</u> the Court to deem the defense waived, rather Plaintiff frames waiver as an issue of judicial efficiency and equity: "The dubious procedural machinations of the Commonwealth Defendants should not delay this action.  The Court may rule that the non-exhaustion defense becomes unavailable to Defendants when the pending motion is decided."  (Doc. No. 97 at 15.)  The Court will not rule as Plaintiff requests, especially given the wide discretion the Court has to manage its docket, and in light of Magistrate Judge Schwab's recommendation that Defendants be allowed to request a plenary hearing before her on any remaining exhaustion issues.  (Doc. No. 95 at 29.)

## IV.     CONCLUSION

For the foregoing reasons, the Court will overrule Plaintiff's objections and will adopt Magistrate Judge Schwab's Report and Recommendation.  An order consistent with this memorandum follows.