# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE ABNEY, | : | Civil No. 1:13-CV-01418 |
| Plaintiff, | : | |
| v. | : | Judge Jennifer P. Wilson |
| SERGEANT CALEB YOUNKER, *et al.*, | : | |
| Defendants. | : | Magistrate Judge Martin C. Carlson |

## MEMORANDUM

Before the court are cross motions for summary judgment, a report and recommendation from United States Magistrate Judge Martin C. Carlson addressing those motions, and objections to Judge Carlson's report and recommendation filed by Plaintiff Clarence Abney ("Abney"). (*See* Docs. 219, 227, 251, 252.) For the reasons that follow, Judge Carlson's report and recommendation (Doc. 252) is adopted in its entirety and Abney's objections to the report and recommendation (Doc. 253) are overruled. Accordingly, Abney's motion for summary judgment (Doc. 219) is denied and the Defendants' motion for summary judgment (Doc. 227) is granted in part and denied in part.

## STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court is required to conduct a de novo review of the contested portions of the report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3);

1

*Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district court may accept, reject, or modify the magistrate judge's report and recommendation in whole or in part. 28 U.S.C. § 636(b)(1). The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.* "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)).

De novo review of a magistrate judge's report and recommendation is not required where no objections to the report and recommendation have been raised. *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). Instead, the court is only required to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* (quoting Fed. R. Civ. P. 72 advisory committee's note to 1983 addition). De novo review is also not required where a party raises only general objections to the report and recommendation. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). "To obtain de novo determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report." *Id.* at 6.

# SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## PROCEDURAL HISTORY

The facts of this case arise from an incident at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon") on June 29, 2012. (Doc. 1.) Abney, an inmate at SCI Huntingdon, got into an argument with Defendant Younker, a corrections officer in the prison. (*Id.*) The argument escalated to the point that Abney punched Younker in the mouth and Younker and a number of other guards then assaulted Abney. (*Id.*) The assault was captured by surveillance footage in the prison. (*Id.*)

Abney sued on May 24, 2013, raising six causes of action under the Eighth Amendment as well as three state law causes of action for assault, battery, and intentional infliction of emotional distress. (*Id.*) The claims focus on three distinct issues arising from the assault: the initial assault, the transport of Abney within the prison after the assault, and the medical care that Abney received after the assault. (*Id.*)

On February 4, 2015, the court granted Defendants summary judgment on Counts III (which alleged deliberate indifference to a serious medical need) and V (which alleged supervisory liability against Defendants Stevens and Bickell), finding that Abney had failed to exhaust administrative remedies as to those claims. (Docs. 110–11.) On January 27, 2016, the court granted judgment to

Abney against Defendant Lehman in the amount of $91,900 following an agreement between those parties. (Docs. 141–42.)

On July 29, 2019, Abney filed a motion for summary judgment as to the issue of liability. (Doc. 219.) Abney's argument relies on the surveillance footage. (Doc. 226.) He argues that the footage establishes that there is no genuine issue of material fact on the question of whether Defendants are liable, and accordingly asks for summary judgment in his favor on that issue. (*Id.* at 5.)

The remaining Defendants filed a motion for summary judgment on August 29, 2019. (Doc. 227.) Defendants argue that the video evidence "blatantly contradicts" Abney's version of events and that the use of force and amount of force used were reasonable. (Doc. 228 at 9–15.) Defendants further argue that the complaint does not sufficiently allege each individual's personal involvement in the assault. (*Id.* at 15–16.) With regard to the transport of Abney within the prison, Defendants argue that the use of force was not excessive and that they are entitled to qualified immunity. (*Id.* at 16–21.) As for Abney's state law claims of assault, battery, and intentional infliction of emotional distress, Defendants first argue that because they should be granted summary judgment on the constitutional claims, the court should decline to exercise supplemental jurisdiction over the state law claims. (*Id.* at 22.) Defendants additionally argue that they should be granted

summary judgment as to the merits of the state law claims and that they would be entitled to sovereign immunity on the state law claims. (*Id.* at 22–25.)

**JUDGE CARLSON'S REPORT AND RECOMMENDATION**

Judge Carlson's report and recommendation addresses both motions for summary judgment. (*See* Doc. 251.) Judge Carlson begins his report and recommendation by finding that the video evidence of the assault is inconclusive, but that the video evidence of Abney being transported within the prison supports Defendants' version of events. (Doc. 251 at 1–7.)

Turning to a discussion of the summary judgment motions as they relate to the initial assault, Judge Carlson first finds that Defendants' personal involvement argument is without merit since all the Defendants have acknowledged their personal involvement through statements given after the incident. (*Id.* at 18–19.) Judge Carlson then concludes that summary judgment cannot be entered for either party as to the initial assault given the significant factual disputes as to what happened. (*Id.* at 19–21.) Judge Carlson similarly finds that factual disputes preclude the entry of summary judgment on the issues of sovereign immunity and the Defendants' alleged failure to intervene. (*Id.* at 21–26.)

As for Abney's claims arising out of his transport within the prison, Judge Carlson concludes that Defendants are entitled to qualified immunity because "Abney has not presented evidence from which a trier of fact could conclude that

7

the[] officers used excessive force during the transport in violation of the Eighth Amendment," *id.* at 30, and because "it was not clearly established at the time of the 2012 incident that placing an inmate who had assaulted a staff member in restraints constituted excessive force in violation of the Eighth Amendment." (*Id.* at 32.) Judge Carlson additionally finds that Defendants would be entitled to sovereign immunity as to Abney's state law claims because Abney had not produced any facts to show that the Defendants' actions had been done in an outrageous manner such that the actions could be considered outside the scope of the Defendants' employment. (*Id.* at 33.)

Judge Carlson accordingly recommends that Defendants Booher, Huber, Wertz, and Maxwell be granted summary judgment as to the claims arising out of the transport of Abney, but that summary judgment be denied in all other respects. (Doc. 251 at 34.)

On October 13, 2019, Abney filed objections to Judge Carlson's report and recommendation, objecting to Judge Carlson's recommendation that the court grant summary judgment on the claims arising from the transport of Abney. (Doc. 252.) Abney argues that Defendants are not entitled to qualified immunity as to these claims. (*Id.* at 1.) In making this argument, Abney first argues that the report and recommendation "erroneously reduces Abney's excessive-force claims to the mere use of handcuffs and shackles during transport of an injured prisoner."

8

(*Id.* at 3.)  Abney asserts that his Eighth Amendment excessive force claim arises not simply from the use of restraints, but also from the fact that Defendants dragged or "frog-marched" him through the prison.  (*Id.*)  Rather than just a claim about the use of restraints, Abney argues, "[t]he claims in Count IV arise from the use of the restraints to facilitate contortions of his body to force his head down and his elbows up in a manner that cut off his air, exacerbated his brain injury, rendered him delirious, and spilled his blood all along the parade route through two cell blocks."  (*Id.* at 6.)  Therefore, Abney argues, because Defendants frog-marched him through the prison, the "frog-march requires analysis separate from the application of cuffs and shackles to the injured inmate."  (*Id.* at 7.)

Abney argues that Judge Carlson erred by making factual determinations that the court may not make at the summary judgment stage.  (*Id.* at 11.)  Additionally, Abney argues that the factual determinations that Judge Carlson did make "happen[] to be wrong."  (*Id.* at 12.)  Abney specifically attacks Judge Carlson's finding that video footage "does not depict any gratuitous use of force on Abney other than the fact that he is in restraints and being walked to the RHU with his arms behind his back, although the video does depict that Abney fell one time."  (*Id.* at 11.)  Abney argues that this conclusion is wrong since video evidence actually depicts prison staff using excessive force.  (*Id.* at 12.)

9

Abney objects that the report and recommendation should not be adopted since its factual determinations are contradicted by the evidence. (*Id.* at 13–14.) In making this argument, Abney points to a number of facts that he asserts Judge Carlson got wrong, all of which have to do with the medical care Abney received after the assault. (*Id.*) Finally, Abney argues that the report and recommendation should be denied in its recommendation that Defendants be granted sovereign immunity for the same reasons he argues that summary judgment should be denied for the excessive force claims. (*Id.* at 16.)

Defendants filed a brief opposing Abney's objections on October 25, 2019. (Doc. 253.) Defendants argue that Abney's objections amount to nothing more than a disagreement with Judge Carlson over whether the video constitutes sufficient evidence to go to trial on Abney's claims arising out of the transport. (*Id.* at 2–4.) They accordingly argue that Judge Carlson's report and recommendation should be adopted to the extent he finds that Defendants were entitled to qualified immunity on the transport claims. (*Id.*) They argue that the finding of sovereign immunity should stand for the same reason. (*Id.* at 4–5.)

Abney filed a reply brief on October 31, 2019. (Doc. 254.) Abney argues that he did not allege merely the use of restraints, he "alleged torture." (*Id.* at 2.) He alleges that the video evidence confirms this torture, but asserts that Judge Carlson's report and recommendation and the Defendants' arguments address only

the use of restraints (*Id.*) Abney goes on to argue that "torture through use of asphyxiation during a contorted frog-march has never been found Constitutional by any judicial authority." (*Id.* at 3.) Abney then argues that "[t]he outrageousness attending the breaches of the use-of-force policy, as alleged, precludes sovereign immunity at this juncture." (*Id.* at 6.) Finally, Abney argues that Judge Carlson's factual findings are contradicted by some of the video evidence in the case. (*Id.* at 8–9.)

## DISCUSSION

At the outset, the court notes that the only objections lodged to Judge Carlson's report and recommendation pertain to the period of time in which Abney was transported within the prison. Accordingly, in reviewing the portions of the report and recommendation to which no objections have been raised, the court must only satisfy itself that there is no clear error on the face of record. *Univac*, 702 F. Supp. 2d at 469.

The court has reviewed those portions of Judge Carlson's report and recommendation to which no objections have been raised and finds that there is no clear error on the face of the record. The court therefore adopts those portions of Judge Carlson's report and recommendation as the reasoning of the court.

As for the portions of Judge Carlson's report and recommendation to which Abney objects, the court has conducted a de novo review of those portions of the

11

report and recommendation and agrees with Judge Carlson's conclusions that Defendants Booher, Huber, Wertz, and Maxwell are entitled to qualified immunity and sovereign immunity as to Abney's claims arising out of his transport within the prison. The court will analyze those claims below.

### A. Defendants Booher, Huber, Wertz, and Maxwell Are Entitled to Qualified Immunity

The doctrine of qualified immunity recognizes that despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).

Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). Courts follow a two-pronged test to determine whether qualified immunity applies. *Pearson*, 555 U.S. at 232. First, the court must determine whether the defendants violated the plaintiff's statutory or constitutional right.

*District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Second, the court must determine whether the right at issue was clearly established at the time of the violation. *Id.* (citing *Reichle*, 566 U.S. at 664). The court may exercise its discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Here, Judge Carlson concludes that the Defendants did not violate Abney's rights while transporting him within the prison. Judge Carlson notes that the video evidence "does not depict any gratuitous use of force on Abney other than the fact that he is in restraints and being walked to the RHU with his arms behind his back, although the video does depict that Abney fell one time." (Doc. 251 at 30.) In addition to the lack of video evidence of an Eighth Amendment violation, Judge Carlson concludes that "Abney produces no evidence, other than his own belief, that the restraints were applied, and the manner in which he was walked to the RHU effected, with the sole purpose to inflict further harm on him." (*Id.*) Judge Carlson accordingly concludes that "Abney has not presented evidence from which a trier of fact could conclude that these officers used excessive force during the transport in violation of the Eighth Amendment." (*Id.*)

The court agrees with Judge Carlson that there is no evidence of record from which a finder of fact could conclude that the Defendants violated Abney's Eighth Amendment rights while transporting him. Abney has not produced any evidence beyond the video footage to support a conclusion that the Defendants violated his Eighth Amendment rights, and the court agrees with Judge Carlson that the video evidence plainly refutes Abney's claims of Eighth Amendment violations during the transport. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (noting that summary judgment is appropriate where video evidence "utterly discredit[s]" the plaintiff's version of events).

Moreover, contrary to Abney's argument, Judge Carlson's report and recommendation does not reduce Abney's Eighth Amendment claim to one about the use of restraints. Instead, Judge Carlson finds that the video evidence of the transfer "does not depict any gratuitous use of force on Abney other than the fact that he is in restraints and being walked to the RHU with his arms behind his back, although the video does depict that Abney fell one time." (*Id.* at 30.) Thus, rather than reducing Abney's claim to one about the use of restraints, Judge Carlson considers the video evidence of the transfer and concludes that the use of restraints and the fact that Abney's arms were behind his back are the only possible instances of gratuitous force that are shown by the video, neither of which Judge Carlson finds sufficient to establish a violation of the Eighth Amendment.

Abney's objections therefore amount to nothing more than a disagreement with Judge Carlson about what the video shows: Judge Carlson reviews the video and concludes that there are no facts from which a finder of fact could find an Eighth Amendment violation; Abney reviews the video and concludes that a finder of fact could find an Eighth Amendment violation. In conducting a de novo review of this disagreement, the court agrees with Judge Carlson that there is no evidence of record from which a finder of fact could conclude that the Defendants violated Abney's Eighth Amendment rights when transporting him within the prison.

Given that conclusion, the court declines to decide whether the right at issue was clearly established at the time of the incident. *See Pearson*, 555 U.S. at 236 (noting that a district court may exercise its discretion as to the order in which it analyzes qualified immunity prongs). Accordingly, the court finds that Defendants Booher, Huber, Wertz, and Maxwell are entitled to qualified immunity as to the claims arising out of the transport of Abney.

### B. Defendants Booher, Huber, Wertz, and Maxwell Are Entitled to Sovereign Immunity

The Eleventh Amendment of the United States Constitution provides that state governments and their agencies are entitled to sovereign immunity. U.S. CONST. amend. XI. The doctrine of sovereign immunity extends to both state agencies and their employees. *Hollihan v. Pa. Dep't of Corr.*, 159 F. Supp. 3d

502, 510 (M.D. Pa. 2016) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

Pennsylvania law reaffirms the Eleventh Amendment's grant of sovereign immunity by providing that employees of state agencies "acting within the scope of their duties" are entitled to sovereign immunity. 1 Pa.C.S. § 2310. An employee's conduct is within the scope of his employment if (1) the conduct is of the kind the employee is employed to perform; (2) the conduct occurs within the time and space limits authorized for the employee's job; and (3) the employee engages in the conduct with at least a partial purpose of serving his employer. *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) of Agency § 228). In addition, if force is used by the employee, the force must be of such a nature that it was "not unexpectable by the employer." *Farmer v. Decker*, 353 F. Supp. 3d 342, 350 (M.D. Pa. 2018) (quoting *Savage v. Judge*, No. 05-CV-02551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2007)).

On the issue of sovereign immunity, Judge Carlson finds that "Abney produces no evidence from which a reasonable factfinder could infer that [Defendants Booher, Huber, Wertz, and Maxwell] acted in an outrageous manner when they transported him to the RHU in restraints after the assault." (Doc. 251 at 33.) Judge Carlson states that he therefore "cannot conclude that the defendants' conduct was so outrageous as to fall outside the scope of their employment as

correctional staff" and accordingly concludes that they are entitled to sovereign immunity. (*Id.*)

The court agrees with Judge Carlson that there is no evidence of record from which a finder of fact could conclude that Defendants Booher, Huber, Wertz, and Maxwell were acting outside the scope of their employment when they transported Abney. Accordingly, the court finds that Defendants Booher, Huber, Wertz, and Maxwell are entitled to sovereign immunity as to the claims arising out of the transport of Abney.

## CONCLUSION

For the foregoing reasons, Judge Carlson's report and recommendation is adopted in its entirety and Abney's objections to the report and recommendation are overruled. Accordingly, Abney's motion for summary judgment is denied, and the Defendants' motion for summary judgment is granted in part and denied in part. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 30, 2020